IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

CIVIL NO. 5:23-CV-00137

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| APPROXIMATELY $10,825.98 IN U.S. CURRENCY seized from Seth Randall Dula on or about March 25, 2023, in Catawba County, North Carolina, | ) ) ) ) ) |
| and | ) ) |
| APPROXIMATELY $4,450.00 IN U.S. CURRENCY seized from Seth Randall Dula on or about April 4, 2023, in Catawba County, North Carolina, | ) ) ) ) ) |
| Defendants. | ) |

## ORDER OF DEFAULT JUDGMENT

This matter is before the Court on the Government's Motion for Default Judgment of Forfeiture (Doc. No. 7). Pursuant to Fed. R. Civ. P. 55(b)(2), the Government requests that the Court enter a Default Judgment of Forfeiture with respect to the approximately $10,825.98 in U.S. currency and the approximately $4,450.00 in U.S. currency (collectively, "the Defendant Currencies) as identified in the Complaint.

## FACTUAL BACKGROUND

Where, as here, an entry of default occurs, the defaulted party is deemed to have admitted all well-pleaded allegations of fact in the complaint. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2011); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than

1

one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied"). Thus, the factual allegations in the Government's Verified Complaint, Doc. 1, are deemed admitted as true. The following is a recitation of the relevant, admitted facts:

In or around March 2022, ATF Special Agent Jared Wingler and Hickory Police Department Investigator Ryan Hatch received information from a confidential informant that an individual named Seth Randall Dula was distributing methamphetamine in the Hickory, NC area. Doc. 1 ¶ 7. ATF and the Hickory Police Department conducted a joint investigation of Mr. Dula's activities. *Id*. ¶ 8. At all times relevant to this case, Mr. Dula was a seller and distributor of methamphetamine. *Id*. ¶ 9.

Mr. Dula is a convicted felon. *Id*. ¶ 10. Mr. Dula has an extensive criminal history, which includes the following convictions: (1) a conviction in 2020 for possession of a weapon by a prisoner; (2) a conviction in 2018 for possession of a Schedule II controlled substance; (3) a conviction in 2018 for felony speeding to elude arrest; (4) a conviction in 2009 for assault with a deadly weapon inflicting serious injury with intent to kill; (5) a conviction in 2009 for possession of cocaine; (6) a conviction in 2006 for possession with intent to distribute cocaine; (7) a conviction in 2004 for possession with intent to distribute cocaine; and (8) a conviction in 2003 for common law robbery. *Id*. ¶ 11.

On March 29, 2022, Mr. Dula sold approximately 57 grams of methamphetamine to a confidential informant, and the transaction was audio/video recorded. *Id*. ¶ 12. On April 6, 2022, Mr. Dula sold approximately 113.9 grams of methamphetamine to a confidential informant and the transaction was audio/video recorded. *Id*. ¶ 13. On June 14, 2022, Mr. Dula sold approximately 56 of methamphetamine to a confidential informant, and the transaction was audio/video recorded. *Id*. ¶ 14. On June 23, 2022, Mr. Dula sold approximately 48.6 grams of

methamphetamine to a confidential informant, and the transaction was audio/video recorded. *Id*. ¶ 15. On June 30, 2022, Mr. Dula sold approximately 58.04 grams of methamphetamine to a confidential informant, and the transaction was audio/video recorded. *Id*. ¶ 16.

On March 25, 2023, a Hickory Police Department officer observed a silver motorcycle traveling at a high rate of speed. The motorcycle performed what is known as a "wheelie," during which the front tire of the motorcycle leaves the ground. Mr. Dula was the operator of the motorcycle. *Id*. ¶ 17. The officer attempted to conduct a traffic stop of the motorcycle, but it refused to yield to the patrol vehicle's blue lights and sirens. *Id*. ¶ 18. After fleeing from the attempted traffic stop, the motorcycle began weaving around several cars while heading westbound on I-40 at a speed of approximately 110 mph. *Id*. ¶ 19. The motorcycle continued to flee from the police, and ultimately exited I-40 and turned into a Days Inn located at 1725 13th Avenue in Hickory, NC. *Id*. ¶ 20.

After traveling through the Days Inn parking lot, the motorcycle left the parking lot and continued to travel at a high rate of speed. *Id*. ¶ 21. Upon reaching the intersection of Highway 321 and Riverbend Road, the motorcycle attempted to make a right turn and went off the road, whereupon it struck a silver vehicle, and Mr. Dula fell off the motorcycle. He was wearing a black backpack. *Id*. ¶ 22. After exiting his patrol vehicle, the officer gave verbal commands to Mr. Dula to stay on the ground and place his hands behind his back. *Id*. ¶ 23. Mr. Dula was detained. The officer searched Mr. Dula's backpack and located a clear plastic bag containing approximately 5 grams of marijuana. *Id*. ¶ 24.

On March 25, 2023, the same day as the motorcycle chase, an officer with the Hickory Police Department responded to the Days Inn to see if Mr. Dula had discarded any items from the motorcycle as he drove through the parking lot. *Id*. ¶ 25. After the officer canvassed the parking

3

lot, an employee at the Days Inn informed him that Mr. Dula had been staying in Room 334. *Id*. ¶ 26.

Officers obtained a search warrant to search Mr. Dula's hotel room. During the execution of the search warrant of Mr. Dula's hotel room, officers located a plastic container containing approximately 58 grams of marijuana on the top of the bedside table to the right of the bed. *Id*. ¶ 27. Officers also located a black safe in the room that was wedged between the wall and the couch. Because the safe could not be opened at the scene, the officers transported it back to the Hickory Police Department. *Id*. ¶ 28.

After using a Halligan tool to pry open the safe, officers located approximately $11,102.23 in U.S. Currency, along with assorted rounds of ammunition. A small portion of the currency, approximately $275.00, was seized by the North Carolina Department of Revenue for a tax warrant. *Id*. ¶ 29. The remaining amount of the currency, which was later counted and totaled $10,825.98, was seized by ATF for forfeiture. *Id*. ¶ 30.

On April 4, 2023, an investigator with the Hickory Police Department conducted surveillance at Mr. Dula's residence in Hickory, NC in an attempt to locate him on active state arrest warrants. *Id*. ¶ 31. While conducting surveillance, the investigator observed Mr. Dula exit his residence and drive off in a black Honda Accord. *Id*. ¶ 32. The license plate on the Honda Accord was expired, and Mr. Dula's driver's license was permanently suspended. *Id*. ¶ 33.

An officer with the Hickory Police Department conducted a traffic stop of Mr. Dula, and he was arrested. During an inventory of the vehicle, an officer located a plastic bag containing a white powder residue and a red straw. *Id*. ¶ 34. Law enforcement seized the plastic bag and straw, and ATF seized approximately $4,450 in U.S. Currency from Mr. Dula's person. A field

test performed on the white powder residue yielded positive results for the presence of cocaine. *Id*. ¶ 35.

Law enforcement also applied for and received a search warrant to search Mr. Dula's residence. During the execution of the search warrant of Mr. Dula's residence, law enforcement located and seized, among other things, digital scales, bags containing methamphetamine that weighed approximately 66.99 grams, and bags containing fentanyl that weighed 54.12 grams. *Id*. ¶ 36.

In 2022—the year preceding the seizure of the Defendant Currencies—Mr. Dula had no reported North Carolina wage history. *Id*. ¶ 37.

## **PROCEDURAL BACKGROUND**

On August 31, 2023, the Government filed a Verified Complaint for Forfeiture *In Rem*, alleging that the Defendant Currencies seized from Mr. Dula are subject to civil forfeiture under 21 U.S.C. § 881(a)(6). Doc. 1. On September 18, 2023, the Clerk issued a Warrant of Arrest *In Rem* for the Defendant Currencies. Doc. 2.

After the Government filed its Complaint, and in accordance with Rule G(4)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the Government provided direct notice of this action to known potential claimants. Specifically, on September 19, 2023, the Government mailed notice and a copy of the Complaint to Mr. Dula. Additionally, in accordance with Supplemental Rule G(4)(a), the Government provided notice by publication as to all persons with potential claims to the Defendant Currencies by publishing notice via www.forfeiture.gov for 30 consecutive days, beginning on September 19, 2023. *Id.*

The Government has taken reasonable steps to provide notice to known potential claimants, and the Government has otherwise complied with the notice requirements set forth in

Supplemental Rule G(4). During the pendency of this action, no individual or entity has made a timely claim to the Defendant Currencies.

On December 27, 2023, the Clerk entered an Entry of Default. Doc. 6.

## **DISCUSSION**

Pursuant to the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), the Government has the initial burden of establishing by a preponderance of the evidence that the defendant property is subject to forfeiture. 18 U.S.C. § 983(c)(1). A complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(f). The Government may seek forfeiture of currency if it was used, or intended to be used in exchange for a controlled substance, or represents proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate a violation of the Controlled Substances Act, 21 U.S.C. § 801 *et seq*. *See* 21 U.S.C. § 881(a)(6).

Based upon the allegations of the Government's Verified Complaint—which are deemed admitted as true—the Court finds that the Government has satisfied its burden of showing that the Defendant Currencies are subject to civil forfeiture under 21 U.S.C. § 881(a)(6). Additionally, the Court finds that the Government has taken reasonable steps to provide notice to known potential claimants, and the Government has otherwise complied with the notice requirements set forth in Supplemental Rule G(4). No individual or entity has timely filed a claim to the Defendant Currencies.

In sum, the Court finds that the Government has established that default judgment is appropriate.

## JUDGMENT

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that the Government's Motion for Default Judgment of Forfeiture is hereby **GRANTED** and Judgment of Forfeiture is **ENTERED** in favor of the United States against all persons and entities with respect to the Defendant Currencies identified in the Complaint.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that any right, title, and interest of all persons to the Defendant Currencies are hereby forfeited to the United States, and no other right, title, or interest shall exist therein.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the United States Marshal is hereby directed to dispose of the Defendant Currencies as provided by law.

**SO ORDERED**.

Signed: January 27, 2024

Kenneth D. Bell
United States District Judge